Exhibit 6

**JAMS ARBITRATION**

| | | |
|---|---|---|
| KENNETH MARK ENGELS and UNHA ENGELS, and WORKUP, INC. | ) | |
| | ) | |
| Claimants, | ) | |
| | ) | Case No. 5335000098 |
| v. | ) | |
| | ) | |
| D2 PHARMA CONSULTING, LLC, n/k/a D2 SOLUTIONS HOLDCO LLC, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONSE TO THIRD AMENDED STATEMENT OF CLAIM AND JURISDICTIONAL CHALLENGE**

Respondent D2 Pharma Consulting, LLC[1] ("***D2 Pharma***"), by and through its undersigned attorneys, and for its Response to the Third Amended Statement of Claim submitted by Kenneth Mark Engels, Unha Engels (the "***Engels***"), and WorkUp, Inc. ("***WorkUp***") (collectively, "***Claimants***"), states as follows:

**BRIEF STATEMENT OF RESPONDENT'S POSITION**

1. In 2019, D2 Pharma acquired WorkUp, a patient engagement company, which was founded and principally owned by the Engels. WorkUp filed a lawsuit against D2 Pharma in connection with that acquisition. The matter was resolved and WorkUp and D2 Pharma entered into the December 30, 2020, Settlement Agreement by and between D2 Pharma and WorkUp (the "Settlement Agreement") attached as **Exhibit 1**. As part of the settlement terms, the Engels acquired a 7% ownership interest in D2 Pharma.

2. Claimants argue that under the terms of the Settlement Agreement, D2 Pharma could not dilute the 7% ownership interest the Engel's received. Specifically, the Claimants all

[1] Claimants have incorrectly named Respondent as being now known as "D2 Solutions Holdco, LLC". Respondent's correct name is D2 Pharma Consulting, LLC.

assert that the Settlement Agreement provided the Engels *absolute* anti-dilution rights during the first six months after the Settlement Agreement was signed and provided the Engels *further* anti-dilution protection for all issuances of new membership units, except for capital raises, in perpetuity after the first six months.

3. D2 Pharma issued membership units to pay certain vendors and service providers. This has reduced the Engels' ownership interest by about 2.2%. The Engels argue that this breached the Settlement Agreement.

4. Not so. The plain language of the Settlement Agreement states clearly that the anti-dilution rights provided during the first six months are not absolute but limited to a then-contemplated specific $8 million "Initial Capital Raise", that did not occur during that time, and that the Engels were to be treated just like all other members with no anti-dilution protection after six months.

5. Specifically, the Settlement Agreement states:

10. **Equity Grant**.

a. On the Closing Date, and subject to the execution of a Joinder Agreement substantially in the form attached hereto as Exhibit C by each of (i) Kenneth Mark Engels ("***Kenny***"), and (ii) Unha, D2 shall issue three and one-half percent (3.5%) of the outstanding Units of D2 to each of Kenny and Unha (the "***Closing Equity Issuance***"). The Parties hereby acknowledge and agree that the Units issued as the Closing Equity Issuance shall not be diluted by all or any portion of the up to Eight Million and 00/100 Dollars ($8,000,000.00) capital raise currently contemplated by D2 (the "***Initial Capital Raise***"); provided, however, that in no event shall the Initial Capital Raise for purposes of this undertaking extend for a period longer than six (6) months after the Closing Date. For the avoidance of doubt, the anti-dilution provision set forth in this Section 10.a. shall mean that Kenny and Unha shall each own three and one-half percent (3.5%) of the outstanding Units of D2 during the period of the Initial Capital Raise, but shall, consistently with other Unit Holders, be subject to any dilution consequences in any future capital raises after the Initial Capital Raise.

6. After three years of arbitration, Claimants now want to distract from their obvious misreading of the Settlement Agreement by weaving together an elaborate tapestry of conspiracy

theories and alleged misdeeds by D2 Pharma and its members and officers. Even considering them on their face, Claimants' allegations are riddled with internal inconsistencies and a lack of support from the very documents Claimants cite.

7. D2 Pharma denies Claimants' allegations of fraud or wrongful conduct. At bottom, this dispute truly remains as it was in the beginning – a fight over about 2.2% of the Engels' ownership in D2 Pharma caused by Claimants' incorrect interpretation of the Settlement Agreement.

**GENERAL DENIAL AND CLAIM FOR ATTORNEYS' FEES AND EXPENSES**

8. D2 Pharma hereby denies each and every allegation set forth in the Claimants' Third Amended Statement of Claim.

9. Pursuant to Section 24 of the Settlement Agreement, D2 Pharma is entitled to recover any costs and expenses, inclusive of attorneys' fees, incurred in defending this matter. D2 Pharma has and continues to incur costs and expenses, including attorneys' fees, in the defense of this matter. D2 Pharma prays for an award of these costs, expenses and fees, and will provide the Arbitrator an accounting of these costs, expenses and fees, should they be awarded.

**JURISDICTIONAL CHALLENGES AND AFFIRMATIVE DEFENSES**

Further answering, D2 Pharma asserts the following jurisdictional challenges and affirmative defenses:

10. D2 Pharma objects to the Engels attempt to assert any rights or remedies under or by reason of the Settlement Agreement under any of their Counts, in that Section 33 thereof expressly provides that "[n]othing expressed or implied in th[e] Agreement is intended or shall be construed to confer upon or give any person ***other than the Parties hereto*** any rights or remedies under or by reason of this Agreement or any transaction contemplated hereby." (Emphasis added). The Settlement Agreement at issue was entered into by and between D2 Pharma and WorkUp,

who are appropriately defined therein as the sole "Parties." The Engels are not "Parties" to the Settlement Agreement and, pursuant to Section 33, are therefore expressly barred from asserting any rights or remedies under it.

11. The Engels are precluded from recovering attorney's fees under Section 24 of the Settlement Agreement, which is also limited by its terms to only the "parties" to the Settlement Agreement.

12. Count II – Fraud in the Inducement. In Count II, Claimants allege they were fraudulently induced into accepting the Settlement Agreement. (Third Amended Statement of Claim at ¶¶115-151.) As to the Engels, Count II fails to state a claim as it alleges that D2 Pharma's alleged misrepresentations caused "Claimants into accepting the Settlement" on less favorable terms. (*Id.* at ¶144.) The Engels, individually, did not "accept" the Settlement. The Engels are not parties to the Settlement Agreement and, as expressly stated in the Settlement Agreement, have no rights or remedies by reason of any of the transactions contemplated by the Settlement Agreement.

13. Count II – Fraud in the Inducement. In Count II, Claimants further allege various claimed injuries unique to the Engels. (*Id.* at ¶¶144-51.) Again, the Engels, individually, are not parties to the Settlement Agreement and, as expressly stated in the Settlement Agreement, have no rights or remedies by reason of any of the transactions contemplated by the Settlement Agreement. As such, regarding damages unique to the Engels, Count II further fails to state a claim.

14. Count IV – Breach of Post-Vistria Partnership. This Count relates to a claimed breach of an alleged written agreement memorialized in a September 28, 2019, email, which Claimants dub the "Post-Vistria Partnership" agreement. (*Id.* at ¶¶12;166-68.) This so-called Post-Vistria Partnership agreement is not alleged to contain an agreement to arbitrate nor is the arbitration provision in the Settlement Agreement broad enough to cover an alleged breach of the

purported Post-Vistria Partnership agreement. As such, D2 Pharma objects to any exercise of jurisdiction by JAMS over Count IV – Breach of Post-Vistria Partnership.

15. Count IV – Breach of Post-Vistria Partnership. Further, Claimants add at the end of Count IV an "independent[]" claim that "the diversion of $2.78 million in raised capital to the personal **benefit of Respondents' managers**—rather than to the company and its equity holders—constitutes unjust enrichment." (*Id.* at ¶168.) (emphasis added) To the extent this independent claim for unjust enrichment contends that D2 Pharma's managers unjustly retained a benefit, Count IV fails to state a claim as D2 Pharma's managers are not parties to this arbitration.

16. Count V – Fraudulent Misrepresentation/ Promissory Fraud. In this Count, Claimants make vague assertions about actions "following the Settlement" constituting "deliberate concealment of entity collapse, and parallel creation of new entities while maintaining the illusion that Claimants hold equity in a viable business". (*Id.* at ¶170.) These allegations do not relate or arise out of the Settlement Agreement and therefore are not subject to arbitration. As such, D2 Pharma objects to any exercise of jurisdiction by JAMS over Count V – Fraudulent Misrepresentation/ Promissory Fraud.

17. Count V – Fraudulent Misrepresentation/ Promissory Fraud. Further, Claimants alleged that "Respondent**s** have created four new D2-branded entities and continue to raise funds under the D2 name." (*Id*. at ¶169) (emphasis added). There are no Respondent**s** (plural), only D2 Pharma. In perhaps a Freudian slip, Claimants are acknowledging that their true intention is to assert claims against D2 Pharma's managers who are not parties to this arbitration. As such, Claimants Count V fails to state a claim. (*Id.*)

18. Count VI – Breach of Fiduciary Duty. In this Count, Claimants alleged that they "were owed fiduciary duties by Respondent**s** and Respondent**s**' managers." (*Id*. at ¶171.)

(emphasis added) Again, D2 Pharma is the only "Respondent" and any breach of fiduciary duty claim against a D2 Pharma manager fails to state a claim. Further, the alleged breach of fiduciary duties includes allegations not related to or arising out of the Settlement Agreement. As such, D2 Pharma objects to any exercise of jurisdiction by JAMS over Count VI – Breach of Fiduciary Duty.

19. Request for Relief – Shareholder Oppression Claim. In their Request for Relief, Claimants assert that they are entitled to certain *equitable* remedies due to alleged "shareholder oppression." (*Id.* at ¶¶178-186.) As these claims for relief stem from alleged breaches of duties and shareholder oppression caused by non-party managers of D2 Pharma, these claims fail to state a claim and do not arise from or are related to the Settlement Agreement. As such, D2 Pharma objects to any exercise of jurisdiction by JAMS over claims for "shareholder oppression" and equitable relief regarding the same.

WHEREFORE, Respondent D2 Pharma requests that the Arbitrator: (a) grant their challenges to jurisdiction and grounds for dismissal set forth above and dismiss the allegations and claims relating to Count II, as to the Engels, and Counts IV, V, VI, and claim for Shareholder Oppression, in their entirety; (b) enter an award in D2 Pharma's favor and against Claimants; (c) award D2 Pharma its attorneys' fees and costs incurred herein; and (d) for such other and further relief as the Arbitrator deems just and proper under the circumstances.

Respectfully submitted,

CARMODY MacDONALD P.C.

By: /s/ David P. Stoeberl
David P. Stoeberl, #46024
Tyler C. Schaeffer, #60847
Ryan M. Prsha, #70307
120 South Central Avenue, Suite 1800
St. Louis, Missouri 63105
(314) 854-8600 Telephone
(314) 854-8660 Facsimile
dps@carmodymacdonald.com
tcs@carmodymacdonald.com
rmp@carmodymacdonald.com

Attorneys for Respondent

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 9, 2025, a true and accurate copy of the foregoing was filed electronically with JAMS to be served by operation of their electronic filing system upon all counsel of record.

/s/ David P. Stoeberl